UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

In Re: )
)
Terrance Dale Moore, Jr. and ) Case No. 07-11528C-13G
Rhonda Richardson Moore, )
)
Debtors. )
)

MEMORANDUM OPINION

This case came before the court on February 12, 2008, for a hearing on Confirmation of Debtors' Chapter 13 Plan and an Objection to Confirmation of Chapter 13 Plan filed by FIA Card Services aka Bank of America by eCAST Settlement Corporation, as its Agent, and eCAST Settlement Corporation, assignee of GE Money Bank Belk and Lowe's Consumer (collectively "eCAST"). Stephen D. Ling appeared on behalf of Terrance Dale Moore, Jr. ("Male Debtor") and Rhonda Richardson Moore ("Female Debtor") (collectively "Debtors"). James E. Vaughan appeared on behalf of eCAST. Jennifer R. Harris appeared on behalf of Anita Jo Kinlaw Troxler, the Chapter 13 Standing Trustee ("Trustee"). For the reasons that follow, the court will overrule eCAST's objection, in which the Trustee joins, and confirm the Debtors' Chapter 13 plan.

STATEMENT OF FACTS

The facts are not in dispute. The Debtors filed a Chapter 13 petition on October 4, 2007. As part of their petition, the Debtors filed Official Form 22C-Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable

Income ("Form B22C"). Form B22C shows that the Debtors have current monthly income of $13,500.00, annualized current monthly income of $162,000.00, and monthly disposable income of $700.98. In arriving at the monthly disposable income figure on Form B22C, the Debtors deducted $263.36 on Line 47a. for a debt payment to Bank of the West secured by Debtors' boat, motor and trailer. On December 7, 2007, the Debtors proposed their Chapter 13 plan which provides for a monthly plan payment of $2,200.00 for 60 months. The plan includes a disposable income requirement of $42,058.00[1] which will be paid to non-priority unsecured creditors and provide an estimated dividend of 15% to such creditors.[2]

eCAST is the holder of an unsecured claim against the Debtors arising out of the Debtors' use of certain credit card accounts and represents approximately 28% of the Debtors' unsecured non-priority debt. eCAST objected to the Debtors' Chapter 13 plan on the basis that Debtors were not proposing to pay all of their "projected disposable income" as required by section 1325(b)(1)(B). The basis for this objection is the $263.36 deduction taken on Form B22C for the debt payment to Bank of the West secured by the Debtors' boat, motor and trailer. eCAST alleges that the $263.36 deduction is

---

[1]This figure was obtained by multiplying the Debtors' monthly disposable income ($700.96) by the Debtors' applicable commitment period (60 months).

[2]On Schedule F, Debtors listed non-priority unsecured debt of approximately $268,972.00.

- 2 -

improper and that the Debtors' monthly disposable income figure should be $937.32[3] which would require that the plan be amended to provide that $56,239.20 be paid as disposable income to non-priority unsecured creditors before the plan would be confirmable pursuant to section 1325(b)(1). The Trustee joins in the objection filed by eCAST.

## DISCUSSION

As the holder of an allowed unsecured claim, eCAST has standing to object to confirmation of the Debtors' Chapter 13 plan pursuant to section 1325(b)(1):

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-
>
> \* \* \*
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1) (2005). At issue in this case is whether the Debtors' Chapter 13 plan provides that all of the Debtors' "projected disposable income" is being "applied to make payments to unsecured creditors." eCAST's position that the Debtors have not complied with this requirement is based entirely upon the

---

[3]This figure is obtained by adding the allegedly improper deduction of $263.36 to the monthly disposable income figure of $700.96 that is currently shown on Form B22C.

- 3 -

contention that the $263.36 boat payment may not be deducted from Debtors' current monthly income in computing Debtors' projected monthly income because such payment is not a "necessary" expense.

In resolving the foregoing issue, the court first turns to the definition of "disposable income" found in section 1325(b)(2). Section 1325(b)(2) provides: "For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor. . . less amounts reasonably necessary to be expended. . . ." 11 U.S.C. § 1325(b)(2)(2005). Section 1325(b)(3) provides: "Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than [the applicable median family income]." 11 U.S.C. § 1325(b)(3)(2005). The Debtors have annualized current monthly income greater than the applicable median family income;[4] therefore, section 1325(b)(3) applies in this case and "amounts reasonably necessary to be expended" must be "determined in accordance" with section 707(b)(2)(A) and (B). See, e.g., In re Barr, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006) ("The

---

[4]The applicable median family income is determined by reference to the median income at the time a debtor files a bankruptcy petition for a family of equal size in the state in which a debtor resides. In North Carolina, the median income for a family of five at the time the Debtors filed their bankruptcy petition was $68,320.00. Debtors, who have three children and therefore a household of five, have annualized current monthly income of $162,000.00. The Debtors have annualized current monthly income greater than the applicable median family income.

- 4 -

Case 07-11528   Doc 26   Filed 04/02/08   Page 4 of 14

use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income."); In re Austin, 372 B.R. 668, 677 (Bankr. D. Vt. 2007) ("[Section 1325(b)(3)] is unambiguous. It specifies that the expenses of above-median debtors 'shall' be determined according to § 707(b)(2)(A) and (B).").

Section 707(b)(2)(A) provides, in pertinent part:

(I) In considering whether under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) . . . is not less than. . . .

(ii) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service. . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. . . .

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of-
    (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
    (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

(iv) The debtor's expenses for payment of all priority claims . . . shall be calculated as the total amount of

debts entitled to priority, divided by 60.

11 U.S.C. § 707(b)(2)(A) (2005).[5]

Section 707(b)(2)(A), when read in conjunction with section 1325(b)(3), permits a chapter 13 debtor to reduce his or her current monthly income by the amounts determined under subsections (ii), (iii), and (iv) of section 707(b)(2)(A). Because section 1325(b)(3) provides that "amounts reasonably necessary to be expended shall be determined" pursuant to section 707(b)(2)(A), and section 707(b)(2)(A) provides that amounts determined under section 707(b)(2)(A)(iii) are allowed reductions from current monthly income, the amounts determined under section 707(b)(2)(A)(iii) are "amounts reasonably necessary to be expended" and may be subtracted from a debtor's current monthly income to determine projected disposable income. The deductions allowed under subsection (iii) consist of payments on account of secured debt, with the amount of such deductions to be determined as provided in subsection (iii).

There is no requirement under subsection (iii) or elsewhere in section 707(B)(2)(A) that regular monthly payments on secured debts be necessary in order to be deductible under subpart (I) of subsection (iii). As explained by Judge Wedoff, the difference between subparts (I) and (II) of section 707(b)(2)(A)(iii) make

---

[5]Although section 1325(b)(3) refers to section 707(b)(2)(A) and (B), section 707(b)(2)(B) dictates the circumstances when it is appropriate for a debtor to deviate from the deductions allowed in section 707(b)(2)(A). Section 707(b)(2)(B) is not applicable in this case and will not be discussed.

- 6 -

this clear:

> [Section 707(b)(2)(A)(iii)] divides a debtor's total secured debt into two categories: the debt currently due and the debt that is in arrears. As to the current secured debt, subclause (I) directs a deduction for all of the debt that will become contractually due in the five years after the filing of the bankruptcy case, <u>without regard to whether the property securing the debt is necessary</u>. Thus, for purposes of the means test, debt secured by such items as luxury vehicles, pleasure boats, and vacation homes would be deductible.

Eugene Wedoff, <u>Means Testing in the New § 707(b)</u>, 79 AM. BANKR. L.J. 231, 274 (Spring 2005)(emphasis added). This court is persuaded that the presence of the language requiring that property be "necessary for the support of the debtor and the debtor's dependents" in section 707(b)(2)(A)(iii)(II), and the absence of that language in section 707(b)(2)(A)(iii)(I), reflects that Congress did not intend that a debtor must prove that property is necessary before being allowed to take a deduction for secured debt, as long as the debtor was current on the debt at the time of filing the bankruptcy petition. <u>See</u> also <u>In re Musselman</u>, 379 B.R. 583, 591 (Bankr. E.D.N.C. 2007) ("[T]he plain language of § 707(b)(2)(A)(iii) makes a distinction between its two sub-sections, requiring only the debts in subsection (II) to be necessary for the support of the debt and the debtor's dependents. Therefore, this debtor is not under an obligation to show that the [collateral] is necessary for his support or the support of his dependents."). As the following court so aptly stated:

- 7 -

Case 07-11528   Doc 26   Filed 04/02/08   Page 7 of 14

> One rule of statutory construction which this Court must
> follow is that this Court must presume that Congress acts
> intentionally and purposefully when it includes
> particular language in one section of a statute but omits
> that same language in another section. BFF v. Resolution
> Trust Corp., 511 U.S. 531, 537 114 S.Ct. 1757, 128
> L.Ed.2d 556 (1994). With this rule in mind, this Court
> finds that, by the insertion of the reasonable and
> necessary language in just a few of the sections of
> § 707(b)(2), Congress intended courts to do a "reasonable
> and necessary" review of only those specific expense
> deductions where the language is expressly
> inserted. . . . Congress did not include the reasonable
> and necessary standard in § 707(b)(2)(A)(iii)(I) which
> provides for the deduction of the "total amount of all
> amounts scheduled as contractually due" during the
> five-year commitment period. . . . Had Congress wanted
> to limit the secured debt deductions to those debts
> secured only by certain types or amounts of collateral,
> it could have done so. It did not do so and, in the
> absence of any express limitation in the statute, this
> Court cannot find any basis to impose [such] a
> limitation.

In re Carlton, 370 B.R. 188, 191-92 (Bankr. C.D. Ill. 2007). A debtor need only show that property is necessary when trying to reduce current monthly income by taking a deduction for arrearage payments on secured debt. Id.; See also Hylton, 374 B.R. at 585 ("The language of the Section 707(b)(2)(A)(iii)(I) is clear in providing for the deduction of all secured debt that will become contractually due within the sixty months after the petition date.") (emphasis added). Therefore, because the Debtors are current on the payments due Bank of the West, the court does not have to find that the boat, motor and trailer is necessary in order to find that such payment is allowed pursuant to section 707(b)(2)(A) and, therefore, an "amount reasonably necessary to be

expended" as defined by section 1325(b)(3). See e.g. Carlton, 362 B.R. at 411 ("For BAPCPA cases with over-the-median-income debtors. . . [t]he Court does not use its own judgment on reasonableness or necessity but, rather, must determine whether a particular expense is allowed by § 707(b)(2)); In re Martin, 373 B.R. 731, 734 (Bankr. D. Utah 2007) ("If an expense is allowed under § 707(b)(2), it meets the new definition of 'reasonably necessary' and no subjective review of the expense by the Court is permitted."). Because there is no issue with regard to the amount of the reduction of current monthly income taken as a result of the debt payment on the boat, motor and trailer,[6] and it does not matter whether the boat, motor and trailer are necessary, the court finds that the $263.36 payment to Bank of the West is allowed pursuant to section 707(b)(2)(a)(A)(iii); therefore, the $263.36 payment to Bank of the West is an "amount reasonably necessary to be expended" pursuant to section 1325(b)(3) and the Debtors properly reduced their current monthly income by $263.36 when calculating their projected disposable income.

eCAST and the Trustee argue that in construing section 707(b)(2)(A) in the chapter 13 context, the court should begin reading at section 707(b)(2)(A)(ii), rather than section 707(b)(2)(A)(I). Their reasoning is that section 707(b)(2)(A)(I)

---

[6]Neither eCAST nor the Trustee has alleged that the $263.36 payment on secured debt is not properly calculated pursuant to the formula provided in section 707(b)(2)(A)(iii).

- 9 -

Case 07-11528    Doc 26    Filed 04/02/08    Page 9 of 14

has no applicability in a Chapter 13 case because it includes the procedure for determining whether there is a presumption of abuse in a Chapter 7 case and that the court therefore should skip over subsection (I) entirely and go to section 707(b)(2)(A)(ii) since that is where the enumeration of allowed reductions of current monthly income begins. eCAST and the Trustee argue for this reading because it bolsters their contention that section 707(a)(2)(A)(iii) merely establishes a formula for determining the amount that a debtor may deduct regarding secured debt payment and does not establish whether the debtor is entitled to take the deduction. The court disagrees with the interpretation adopted by eCAST and the Trustee. Such an interpretation simply ignores a significant portion of the language of the statute. Section 1325(b)(3) does not refer only to section 707(b)(2)(A)(ii); it refers to section 707(b)(2)(A) inclusively and without limitation to any designated subparagraph of section 707(b)(2)(A). It is a settled rule of statutory construction that a statute should be construed in a manner that gives effect to as many words of the statute as possible. See United States v. Nordic Village, Inc., 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Although section 1325(b)(3) could have been more precise in utilizing section 707(b)(2)(A) as the means of determining the amounts to be deducted from current monthly income, the language used is sufficient to reflect an intent that in arriving at

- 10 -

disposable income, the "amounts determined under clauses (ii), (iii), and (iv)" should be deducted from current monthly income.

Another argument submitted by eCAST in support of its objection is that payments on secured debt should be considered a "monthly expense"[7] under section 707(b)(2)(A)(ii)[8] and not as a deduction pursuant to section 707(b)(2)(A)(iii). eCAST and the Trustee argue that "secured or legally perfected debts" is one of the categories specified as an Other Necessary Expense by the Internal Revenue Service ("IRS"). See, Internal Revenue Manual § 5.15.1.10 (May 1, 2004). Before the IRS will allow a deduction for a secured debt payment, a taxpayer must show that the payment is necessary and that the taxpayer is actually making that payment. See id. eCAST and the Trustee contend that the Debtors therefore must show that the boat, motor and trailer are necessary before they are allowed to take the secured debt payment as a deduction from current monthly income. The court does not accept this interpretation of section 707(b)(2)(A)(ii). See In re Hylton, 374 B.R. 579, 585 (Bankr. W.D.

---

[7] It should be noted that section 1325(b)(3) refers to "amounts" reasonably necessary to be expended and not to "expenses" to be expended. There is nothing in the text of section 1325(b)(3) that suggest that the court limit the allowed deductions from current monthly income to the monthly expenses described in section 707(b)(2)(A)(ii).

[8] Form B22C does not categorize payments on a secured debt as an expense. Payments on secured debt are a separate reduction of current monthly income. However, because a statute controls if an official form is inconsistent with such statute, the court does not rely on Form B22C and will not discuss it.

- 11 -

Case 07-11528   Doc 26   Filed 04/02/08   Page 11 of 14

Va. 2007) ("eCAST seems to conclude that all secured debts under Section 707(b)(2)(A)(iii) must fit into a set of IRS guidelines as described in Section 707(b)(2)(A)(ii). Such an argument, however, is misplaced."). Such an interpretation ignores the actual construction of the statute and the fact that as drafted it contains three separate categories of deductions. The eCAST interpretation also ignores the following language that is included in subsection (ii): "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii) (2005). It seems clear from this language that the statutory intent was that there be no overlap between subsections (ii) and (iii). The Trustee further argued that the "debts" referred to in section 707(b)(2)(A)(ii) are unsecured debts and that the statement in that provision that monthly expenses do not include payments on debts therefore does not prevent secured debt from being categorized as a monthly expense under subsection (ii) and therefore subject to the necessary test set forth by the IRS. This argument is not persuasive. There is no provision in the Bankruptcy Code that would suggest such a reading. In fact, the term "debt" is a defined term and means "liability on a claim." 11 U.S.C. § 101(12). The term "claim" means "right to payment . . ." 11 U.S.C. § 101(5). The definition of claim thus encompasses both secured and unsecured rights to payment. Therefore, the provision prohibiting payments on debt from being included in monthly expenses

applies to payments on both secured and unsecured debt and excludes both such payments from subsection (ii).

CONCLUSION

Since the sole basis for the objection by eCAST and the Trustee is that the $263.36 secured debt to Bank of the West may not be deducted from current monthly income in computing Debtors' projected monthly income and the court has found that such deduction is permissible, the objection to confirmation filed by eCAST is overruled and Debtors' Chapter 13 Plan shall be confirmed. Separate orders so providing are being entered contemporaneously with the filing of this memorandum opinion.

This **2nd** day of April, 2008.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Terrance Dale Moore
Rhonda R. Moore
171 Rhinewood Lane
Reidsville, NC 27320-7671

Stephen D. Ling, Esq.
706 Green Valley Road, Suite 505
Greensboro, NC 27408

James E. Vaughan, Esq.
206 N. Spruce Street, Suite 2A
Winston Salem, NC 27101

Anita Jo Kinlaw Troxler, Trustee